IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FERNANDO F. HOOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 09-2167-KHV |
| JACE MARTIN, ROBERT SCHLUBEN, ) | |
| BRAD MARTENS, ERIC TIMS, ) | |
| ELLEN T. HANSON, and ) | |
| THE CITY OF LENEXA, KANSAS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **MEMORANDUM AND ORDER**

Under 42 U.S.C. § 1983 and Kansas state law, Fernando F. Hooks brings suit against Jace Martin, Robert Schluben, Brad Martens, Eric Tims, Police Chief Ellen T. Hanson and the City of Lenexa, Kansas. Plaintiff brings individual and official capacity claims against Martin, Schluben, Martens and Tims, alleging that they conspired to use excessive force and unlawfully and wrongfully arrest and imprison him without probable cause in violation of the Fourth and Fourteenth Amendments (Counts I – III). Plaintiff brings official and individual capacity claims against Hanson and alleges that she and the City of Lenexa violated his constitutional rights by enacting and implementing policies and procedures which encouraged police officers to violate the constitutional rights of plaintiff and others, and by inadequately training and supervising Martin, Schluben, Martens and Tims (Count IV). Finally, plaintiff brings supplemental state claims against all defendants for battery, excessive force, false arrest and conspiracy to make a false arrest (Counts V and VI) and claims against Martin, Schluben, Martens, Tims and the City of Lenexa for intentional infliction of emotional distress and false arrest (Count VII).

This matter is before the Court on <u>Defendants' Partial Motion For Judgment On The Pleadings</u> (Doc. #21) filed August 31, 2009. Defendant seeks dismissal under Rules 12(c) and 12(b)(6) of the Federal Rules of Civil Procedure, contending that (1) plaintiff's official capacity claims against the individual defendants are redundant; (2) plaintiff fails to state claims for which relief may be granted under the Fourteenth Amendment; (3) plaintiff fails to state conspiracy claims under Section 1983 or state law and (4) plaintiff fails to state claims against the City of Lenexa and against Hanson in her individual capacity. For the reasons stated below, the Court sustains defendants' motion in part.

## **Legal Standards**

A motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is governed by the same standards as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.[1] See <u>Atl. Richfield Co. v. Farm Credit Bank</u>, 226 F.3d 1138, 1160 (10th Cir. 2000); <u>Mock v. T .G. & Y.</u>, 971 F.2d 522, 528 (10th Cir. 1992). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. <u>Id.</u>; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. <u>Iqbal</u>, 129 S.Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions.

---

[1] Fed. R. Civ. P. 12(c) states in relevant part as follows: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

See id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough for him to make threadbare recitals of a cause of action accompanied by mere conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 1950. Finally, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) depends upon the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 232-32 (3d Cir. 2008)).

**Factual Background**

Plaintiff's first amended complaint alleges the following facts:

Jace Martin, Robert Schluben, Brad Martens and Eric Tims are law enforcement officers for the Lenexa Police Department. Chief Ellen Hanson is a supervisor and final policymaker for the Department.

On December 6, 2007, plaintiff attempted to retrieve clothes from an apartment which he had shared with his girlfriend Malinda Brown and their young son. At approximately 12:30 a.m.,

plaintiff knocked on the door of the apartment, which is on the second floor of the Reserve complex in Lenexa. Brown did not answer the door and plaintiff left. A neighbor heard plaintiff's loud banging on the door, however, and called 911. Officers responded to the call and Martin was in the breezeway outside the apartment when plaintiff returned a short time later.

Plaintiff saw Martin outside the apartment and turned to leave, but Martin yelled at plaintiff to get on the ground. Before plaintiff could do so Martin hit him on the back of the head. Plaintiff yelled "I didn't do nothing! I didn't do nothing!" while Martin hit him with his fists and landed a "sharp knee strike" to plaintiff's midsection. Plaintiff then tried to back away from Martin as Schluben and Martens arrived.

Martin grabbed plaintiff and slammed him into a wall, holding him there while Schluben tasered plaintiff twice, hitting the back of plaintiff's jacket. Martin then slammed plaintiff into a wall again, shattering the glass in a fire extinguisher. Plaintiff shrugged his jacket off and tried to shield himself, teetering close to a stairwell. Marten then fired his taser at plaintiff, who stumbled and fell down the flight of stairs. Martin, Schluben and Martens then grabbed plaintiff and threw him to the ground, and continued to hit him and place their full weight on him while plaintiff continued to repeat "I didn't do nothing!" Tims then arrived and while plaintiff lay spread-eagle face down and bleeding, Tims hit plaintiff's upper body, shoulder and arm with his metal baton.

After overpowering plaintiff, Martin, Schluben, Martens and Tims yelled commands, taunted and threatened plaintiff with the taser. Martin, Martens and Tims beat plaintiff and Schluben (after switching his taser to "drive stun" mode) tasered plaintiff 13 times in 80 seconds on plaintiff's back, the top of his head and next to his left eye. Martens lifted plaintiff's shirt so Schluben could taser plaintiff's bare skin. One of the officers struck plaintiff with a flashlight

and after cuffing plaintiff, Martin tasered him again. The officers then called Med Act which transported plaintiff to Overland Park Regional Medical Center. Plaintiff was treated in the emergency room and was then taken to jail on charges of disorderly conduct, violation of a protective order, battery of a law enforcement officer and obstruction of official duty.

Plaintiff bled profusely during the incident; his blood covered Schluben's gloves and soaked through portions of his pants and long underwear, spattered Tims' boots, trousers and shirt sleeves and covered Martens' clothes. After the clothes were photographed, Martens disposed of his uniform pants, shirt and microphone. Jail officials washed plaintiff's bloody clothing.

All four patrol cars at the scene were equipped with DVD decks which should have automatically recorded the incident, but only Martens' DVD was submitted and downloaded into the police department computer system. No useful video was recorded, however, because Martens had parked too far from the scene. At some point after Martens' microphone captured about ten minutes of audio, he turned it off. Defendants photographed the scene, but seven of the digital images are missing.

Martin, Schluben, Martens and Tims violated widely accepted law enforcement standards with the repeated and prolonged use of the taser (including tasering plaintiff's temple) with simultaneous use of multiple forms of force. The use of excessive force and improper taser use demonstrate that Hanson and the City failed to properly train and supervise the officer defendants. In their reports, the officers also falsely portrayed plaintiff's actions at the scene by claiming he willfully refused their commands. The reports form the basis of the criminal charges against plaintiff pending in the District Court of Johnson County, Kansas for battery on a law enforcement officer and obstruction of official duty.

## Analysis

1. **Official Capacity Claims Against Individual Defendants (All Counts)**

Defendants correctly argue – and plaintiff does not dispute – that the official capacity claims against the individual defendants are redundant because plaintiff has also sued the City of Lenexa. Suits against a municipality and against a municipal officer acting in his or her official capacity are the same. See Reindl v. City of Leavenworth, 361 F. Supp.2d 1294, 1302 (D. Kan. 2005) (citing Watson v. Kansas City, Kan., 857 F.2d 690, 695 (10th Cir. 1988)). Because plaintiff has sued the city directly, the official capacity claims against the individual defendants are redundant and warrant dismissal. See id.; Jones v. Wildgen, 320 F. Supp.2d 1116, 1124 (D. Kan. 2004).[2]

---

[2] In their reply brief, defendants ask the court to impose sanctions under Rule 11 or 42 U.S.C. § 1988 because they previously asked plaintiff to voluntarily dismiss these claims and plaintiff refused. Rule 11 sets forth certain procedural requirements for parties seeking sanctions. See Fed. R. Civ. P. 11(c)(1)(A); Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202, 475 F. Supp.2d 1092, 1101 (D. Kan. 2007). The moving party must submit the motion for sanctions separately from other motions or requests and specifically describe the conduct which allegedly violates Rule 11(b). See Fed. R. Civ. P. 11(c)(1)(A). The moving party must serve the motion on the opposing party. See id. If the offending party does not withdraw the challenged document or conduct after 21 days, the moving party may file its motion for sanctions with the court. See id. The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory. Rubio, 475 F. Supp.2d at 1101 (citing AeroTech, Inc. v. Estes, 110 F.3d 1523, 1529 (10th Cir. 1997)). These provisions are intended to provide a "safe harbor" against Rule 11 motions, so that a party will not be subject to sanctions unless, after motion, it refuses to withdraw a frivolous position or acknowledge that it does not currently have evidence to support a specified allegation. Advisory Committee Notes to 1993 Amendments, Fed. R. Civ. P. 11. Because defendant did not file its motion for sanctions as a separate motion, the Court overrules defendant's request.

The Court further finds that defendants' request under 42 U.S.C. § 1988 is premature. Section 1988 permits the Court in its discretion to award reasonable attorney fees to the prevailing party in a case brought under 42 U.S.C. § 1983. See 42 U.S.C. § 1988(b). In the Tenth Circuit, a prevailing litigant is usually one in whose favor judgment is rendered, and when no judgment has yet been entered in a case a fee award under Section 1988 is not appropriate. See Murray v. Cars Collision Ctr. Of Colo., LLC, No. 04-cv-1456, 2007 WL 1725246, at *3 (D. Colo. June 13, 2007) (citing Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1234 (10th Cir.

(continued…)

## 2. **Fourteenth Amendment Excessive Force Claims (Counts I and II)**

Plaintiff alleges that defendants engaged in excessive force and violated his due process rights under the Fourth and Fourteenth Amendments. Defendants seek dismissal of plaintiff's Fourteenth Amendment claims because only the Fourth Amendment – not the Fourteenth – provides the proper vehicle for evaluating them. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)) (excessive force claim arising out of arrest evaluated under Fourth Amendment, not Fourteenth); Galloway v. Hadl, 548 F. Supp.2d 1215, 1219 (D. Kan. 2008) (citing Becker v. Kroll, 494 F.3d 904, 919 (10th Cir. 2007)) (due process liberty interest claim arising out of unlawful arrest evaluated under Fourth Amendment, not Fourteenth). Graham makes clear that the Fourth Amendment protects individuals against the deliberate use of excessive force in the course of an arrest, investigatory stop, or other "seizure;" the Fourteenth Amendment protects pretrial detainees from the use of excessive force which amounts to punishment, and the Eighth Amendment takes over post-conviction as the primary source of substantive protection. 490 U.S. at 395 n.10.

Plaintiff incorrectly argues that defendants' "conspiratorial effort to cover up their use of excessive force" implicates the Fourteenth Amendment and cites Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir. 2003) and Furtado v. Bishop, 604 F.2d 80 (1st Cir. 1979). Neither case supports plaintiff's position. In Marasco, the Third Circuit affirmed the district court's grant of summary judgment on plaintiff's Fourteenth Amendment claim. There, the family of a man who died while hiding from the police in the woods asserted a Fourteenth Amendment due process claim. Marasco, 318 F.3d at 511. The family alleged that the police had engaged in a

---

² (continued…)
2001). Because judgment has not been entered in this case (and will not be entered with this order), defendants' request is premature.

cover-up to impede their ability to bring a civil suit. Specifically, the family alleged that police had confiscated and then refused to return answering machine tapes which contained messages from the police to the man, and that the police had found the man's body days before reporting it to allow the body further time to decompose to prevent a more definitive autopsy. Id.

In analyzing the claim, the Third Circuit noted that while the Fourteenth Amendment theoretically provides protection from cover-ups which prevent a person who has been wronged from vindicating his rights, such a claim is nearly impossible to make as a practical matter. Id. This is so because to make such a claim, plaintiff must show that defendant's efforts to effectuate a cover-up (1) either prevented plaintiff from filing suit or (2) rendered his access to the courts ineffective or meaningless. Id. Because a plaintiff who brings a claim under Section 1983 has necessarily obtained access to the courts, only pre-filing conduct which prevents a plaintiff from filing suit or renders plaintiff's access to the Court ineffective or meaningless constitutes a constitutional violation. Id. Here, plaintiff makes no allegation that defendants' conspiracy prevented him from filing suit or rendered his access to the courts ineffective or meaningless.

Furtado is similarly distinguishable. First, it involved a detained prisoner – not an arrestee. Furtado, 604 F.2d at 84. Second, the defendant prison guards falsified reports so that plaintiff would be transferred to segregation in order to prevent plaintiff from filing a grievance, thereby potentially denying him due process. Id. at 89. Third, because the issue had not been raised at the district court, the First Circuit refused to consider the Supreme Court holdings in Meachum v. Fano, 427 U.S. 215 (1976) and Montanye v. Haymes, 427 U.S. 236 (1976), that the due process clause of the Fourteenth Amendment does not require a hearing before a prisoner is transferred from one state prison to another having harsher conditions unless a state law or practice creates a liberty interest in continued confinement at the first prison. Furtado, 604 F.2d

at 87.

Here, plaintiff does not allege that the defendants' "conspiratorial effort to cover up their use of excessive force" prevented plaintiff from seeking justice in this Court. Therefore his claims do not implicate the Fourteenth Amendment. Plaintiff's Fourteenth Amendment claims are therefore dismissed.

### 3. Conspiracy Claims (Counts III and VI)

Plaintiff claims that Martin, Schluben, Martens and Tims conspired under 42 U.S.C. § 1983 to use excessive force in violation of the Fourth Amendment and to deprive him of his liberty and due process interests in violation of the Fourteenth Amendment. Plaintiff also claims that all defendants conspired to falsely arrest him under Kansas state law. Defendant argues that plaintiff's conspiracy claims warrant dismissal because plaintiff does not plead them with sufficient factual particularity and instead relies on conclusory allegations.[3]

A conspiracy to violate civil rights is actionable under Section 1983. See Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). To state a Section 1983 conspiracy claim, plaintiff must allege specific facts which show an agreement and concerted action amongst the defendants. Id. To do this, plaintiff must identify the specific time, place, or person involved in the alleged conspiracy, and must place the actions in a context which raises a suggestion of a preceding agreement. Twombly, 127 S. Ct. at 1970 n. 10; see also Wilson v. City of Lafayette, Nos. 07-cv-01844-EWN-KLM, 07-cv-02248-LBT-KLM, 2008 WL 4197742, at *10 (D. Colo. Sept. 10, 2008) (collecting cases) (to plead conspiracy plaintiff must indicate who conspired, what they conspired about and where, when and how they conspired). When the

---

[3] Defendants also purport to seek dismissal of plaintiff's conspiracy claim brought under Count VII. Count VII states a claim under state law for intentional infliction of emotional distress and false arrest, and contains no conspiracy allegations.

challenged action can just as easily be evidence of independent conduct free from an initial agreement, a conspiracy claim does not survive. Patton v. West, 276 Fed. Appx. 756, 758 (10th Cir. 2008) (citing Twombly, 127 S. Ct. at 1966). Similarly, under Kansas state law, the elements of a civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds; and (4) one or more unlawful overt acts. Meyer Land & Cattle Co. v. Lincoln County Conservation Dist., 29 Kan. App. 2d 746, 753 (2001). To survive a motion to dismiss for failure to state a conspiracy claim under Twombly and Iqbal, the complaint must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Phillips v. Bell, No. 08-1420, 2010 WL 517629, at *4 (10th Cir. Feb. 12, 2010) (citing Twombly at 1965). Legal conclusions for claiming a legal conspiracy, without additional allegations of action or inaction, fail to sufficiently state a claim for relief. Id. at *5.

Defendants correctly argue that the complaint contains no allegations which show "how, when, and where" the alleged conspiracy was formed or its specific content, and that plaintiff's conspiracy claims therefore should be dismissed under Twombly. While plaintiff argues that both a meeting of the minds and concerted action can be inferred from the facts in the complaint, he fails to plead facts which raise any suggestion of a preceding agreement to deprive him of his constitutional rights. The complaint suggests that Tims, Martin, Martens and Schluben each used a degree of excessive force, but it does not allege that they had a prior agreement to do so. Further, while the complaint alleges that evidence from the scene is missing or was destroyed, it does not allege how, when or where an agreement was made involving the missing or destroyed evidence, or which defendants besides Martens participated. Finally, while the complaint alleges that the officer defendants each submitted false police reports regarding the incident involving plaintiff, it does not allege how, when, or where an agreement to do so was made.

These facts do not support an inference that before arresting him, the officers conspired to use excessive force against plaintiff or to falsely arrest him and plaintiff cites no legal authority to bolster his argument that his factual averments support such an inference. See, e.g., In re Urethane Antitrust Litig., 663 F. Supp.2d 1067, 1074, 1076-77 (D. Kan. 2009) (complaint which generally alleged beginning date of conspiracy without alleging details about formation or specific meetings or communications involving defendants during alleged timeframe insufficient under Twombly). Accordingly, plaintiff's conspiracy claims are dismissed.

Plaintiff lists new facts which would allegedly enhance his conspiracy claims, and he seeks leave to amend his complaint to add them if the Court finds that his first amended complaint is deficient. See Response To Defendants' Motion For Partial Judgment On The Pleadings (Doc. #29) filed October 1, 2009. Plaintiff's request for leave to amend does not comply with Fed. R. Civ. P. 15 and D. Kan. 15.1, which require a concise statement of the amendment sought and a copy of the proposed amended pleading. The Court therefore overrules it.

### 4. Monell Claims Against The City and Hanson (Count IV)

In Count IV, under 42 U.S.C. § 1983 and Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), plaintiff brings claims against Hanson and the City of Lenexa. Monell provides limited municipal liability for constitutional violations. Christensen v. Park City Mun. Corp., 554 F.3d 1271, 1279 (10th Cir. 2009). Under Monell, municipalities can be held liable for constitutional violations which arise from enforcement of the municipality's policies or procedures. Christensen, 554 F.3d at 1279. Municipalities cannot, however, be liable under Section 1983 for the constitutional torts of their employees under the doctrine of respondeat superior. Id. Thus, a "Monell claim" is a claim against a municipality for a

constitutional deprivation which is tied directly to a policy or custom of the municipality.

Plaintiff's Monell claim against Hanson and the City of Lenexa is that they (1) implemented unconstitutional policies, practices, customs and procedures which led to the violation of plaintiff's constitutional rights and (2) failed to properly train individual officers. Defendants seek dismissal of these claims, arguing that plaintiff has failed to plead facts which support Monell liability against either defendant.[4]

Under Section 1983, a municipality may not be held liable simply because it employs a person who violated plaintiff's federally protected rights. Jenkins v. Wood, 81 F.3d 988, 993 (10th Cir. 1996). For liability to attach to a municipality, plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the alleged violation. Id. Further, to the extent plaintiff asserts that the alleged custom or policy comprised a failure to act (such as a failure to train) he must demonstrate that the municipality's inaction resulted from a "deliberate indifference" to plaintiff's rights. Id. at 994. In a case alleging failure to train, plaintiff must show that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need for additional training. Id. (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

---

[4] Monell involves municipal liability, not individual liability in a defendant's official capacity or otherwise. See Jacobsen v. Lambers, 888 F. Supp. 1088, 1097 (D. Kan. 1995). Hanson may be individually liable, however, for her own culpable conduct which violated plaintiff's rights under Section 1983. Id. Plaintiff's improper characterization of this claim against Hanson as arising under Monell does not therefore justify dismissal. To the extent plaintiff attempts to state his claim against Hanson in her official capacity, however, such claim is redundant. See supra Part 1. Defendants do not allege that Hanson is entitled to qualified immunity and the Court therefore does not address it. See, e.g., Green v. Post, 574 F.3d 1294, 1299 (10th Cir. 2009) (qualified immunity shields government officials from liability if conduct does not violate clearly established rights about which reasonable government official would know).

Defendants argue that except in conclusory fashion, the complaint does not allege that Martin, Martens, Hook or Schluben acted pursuant to a municipal policy or custom, much less that a policy or custom caused the alleged violation.  Further, defendants contend that the complaint does not include factual allegations that the need for more training was so obvious that Hanson and the City were deliberately indifferent to it, or that it identifies or implicates a specific policy or custom of the City which caused the violations plaintiff alleges.[5]

Specifically, the complaint alleges that the officers used excessive force in violation of plaintiff's rights because the City had policies or practices (1) which failed to adequately guide officers about the use of excessive force in the course of making arrests; (2) of not disciplining or punishing officers who use excessive force; (3) of not requiring complete and truthful reports about the use of force; (4) of covering up police misconduct by falsifying and fabricating or disposing of evidence and (5) of being deliberately indifferent when law enforcement officers violated rights of suspects.  First Amended Complaint (Doc. #17) at 16-17.  Plaintiff further alleges that Hanson and the City intentionally implemented these policies and practices to deprive suspects and defendants of their constitutional rights.  Id.  Finally, plaintiff alleges that Hanson and the City failed to adequately train the officers on the proper and constitutional use of tasers, and that this failure to train caused the officers to violate constitutional rights and was done with deliberate indifference to those rights.[6]  Id.

---

[5] The cases cited by both defendants were involved summary judgment and provide limited guidance to the Court in evaluating whether plaintiff complied with Twombly and Iqbal on motion under Rule 12(b)(1).  See Serna v. Colo. Dept. of Corr., 455 F.3d 1146, 1151 (10th Cir.); Montoya v. Bd. Of County Comm'rs, 506 F. Supp.2d 434, 446 (D. Colo. 2007).

[6] Plaintiff again lists new facts which he contends enhance his claims against the City and Hanson and argues that he should be allowed to amend his complaint to add them if the Court finds that his claims are deficient.  See Response To Defendants' Motion For Partial

(continued…)

Plaintiff essentially alleges that the City's informal policies or practices (or lack of enforcement of official policies) set a permissive standard which sent a message to officers that excessive force would be tolerated.  At the pleading stage, plaintiff has alleged a sufficient causal connection to survive a motion to dismiss.  See Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009).

The Court therefore finds that plaintiff has sufficiently alleged that defendants had a policy or custom that directly caused the constitutional violations which he suffered.  Accordingly, defendants' motion to dismiss this claim is overruled.

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion For Judgment On The Pleadings (Doc. #21), filed August 31, 2009 be and hereby is **SUSTAINED in part.**  The Court hereby dismisses all official capacity claims against the individual defendants; Counts I and II, to the extent they purport to state claims under the Fourteenth Amendment; Count III; and Count VI, to the extent it purports to state a conspiracy claim.

The following claims remain:  Counts I and II to the extent they purport to state individual capacity claims under the Fourth Amendment against Martin, Schluben, Martens and Tims; Count IV against the City of Lenexa and Hanson in her individual capacity; Count V against the City of Lenexa and Martin, Schluben, Martens, Tims and Hanson in their individual capacities; Count VI to the extent it states a state law false arrest claim against the City of Lenexa and Martin, Schluben, Martens, Tims and Hanson in their individual capacities; and Count VII against the City of Lenexa and Martin, Schluben, Martens and Tims in their individual

---

[6] (continued…)
Judgment On The Pleadings (Doc. #29) filed October 1, 2009.  Plaintiff's request to amend does not comply with  Fed. R. Civ. P. 15 and D. Kan. 15.1, which require a concise statement of the amendment sought and a copy of the proposed amended pleading.  The Court therefore overrules it.

capacities.

Dated this 8th day of April, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge